UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEY OLIVER,

       Plaintiff,                        CIVIL ACTION NO. 07-12672

       v.                              DISTRICT JUDGE MARIANNE O. BATTANI

HUGH WOLFENBARGER,           MAGISTRATE JUDGE VIRGINIA M. MORGAN
CORRECTIONAL MEDICAL
SERVICES, CAROLYNN DUBUC,
LARRY NUNNERY, J. SCOTT,
MS. LEWIS, KLIMOWICZ, and
JOHN DOE,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of his rights under the United States Constitution. The matter comes before the court on defendants Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz's Motion to Dismiss (D/E #22). For the reasons discussed below, this Court recommends that defendants' motion be **GRANTED IN PART**. The claims against Wolfenbarger, Nunnery, Scott and Klimowicz in their official capacities should be dismissed on the basis of defendants' immunity under the Eleventh Amendment to the United States Constitution. The retaliation claims against Wolfenbarger,

-1-

Scott, Lewis and Klimowicz in their individual capacities should be dismissed because plaintiff failed to state a claim upon which relief can be granted against those defendants, but the retaliation claim against Nunnery in his individual capacity should be allowed to proceed. The claims of deliberate indifference against Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz in their individual capacities should also be allowed to proceed, but plaintiff cannot recover for any mental or emotional injuries with respect to those claims because he did not suffer a physical injury. Defendants motion to dismiss plaintiff's request for transfer is unnecessary as plaintiff never made such a request in his complaint, but to the extent plaintiff does make such a request, it is moot given that plaintiff has already been transferred.

## II. Background

### A. Complaint

On June 25, 2007, plaintiff filed the complaint in this matter (D/E #1). According to plaintiff's complaint, he brought this action pursuant to 42 U.S.C. §1983, §1985(3) and § 1986. (Complaint, Preliminary Statement) Plaintiff also alleges the torts of negligence and the intentional infliction of mental and emotional distress. (Complaint, Preliminary Statement) Defendants Wolfenbarger, Nunnery, Scott and Klimowicz are being sued in both their official and individual capacities while defendant Lewis is only sued in her individual capacity. (Complaint, ¶¶ 5-8, 9-10)

In that complaint, plaintiff asserts that, at all times relevant to this action, he was an inmate at either the Macomb Correctional Facility (MRF) or the G. Robert Cotton Correctional

Facility (JCF), both of which are in the state of Michigan. (Complaint, ¶ 3) Plaintiff also asserts that he was diagnosed at birth as being hearing impaired. (Complaint, ¶ 16)

Plaintiff alleges that, on March 19, 2004, he filed a grievance against MRF staff over violations of MDOC policies and the laws of the United States, including the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (Complaint, ¶ 16)[1]

Plaintiff also alleges that, on April 19, 2004, plaintiff informed defendant Nunnery that plaintiff could not use the prison TTY phone system due to plaintiff's hearing impairment and that plaintiff needed the help of a state certified interpreter to assist him. (Complaint, ¶ 17) Plaintiff further alleges that, on June 1, 2004, he notified Nunnery that, because of plaintiff's inability to use the phone system, plaintiff's parents had to drive up to the prison to inform plaintiff that his sister had died and, subsequently, plaintiff was denied access over the phone to the family and friends who could have consoled plaintiff during plaintiff's grief over his sister's death. (Complaint, ¶ 18)

According to plaintiff, on December 22, 2004, Nunnery retaliated against plaintiff by issuing a notice of intent on plaintiff for plaintiff's alleged violations of MRF policies regarding use of the telephone, despite the fact that Nunnery had authorized Arnold, another prisoner at MRF, to utilize plaintiff's pin number and assist plaintiff in using the TTY phone system. (Complaint, ¶ 21) Plaintiff also alleges that, when he requested a state certified interpreter, Nunnery threatened to put plaintiff on Security Threat Group (STG) status. (Complaint, ¶ 21)

---

[1]Plaintiff also asserts that, after MDOC failed to act on that grievance, he appealed it to Step II, where defendant DuBuc rendered a mere cosmetic response. (Complaint, ¶¶ 19-20)

Plaintiff further alleges that, on January 20, 2005, he filed a grievance regarding the ongoing negligence and deliberate indifference by MRF staff to plaintiff's serious medical needs as a handicapped inmate. (Complaint, ¶ 22) On February 21, 2005, plaintiff appealed that grievance to Step II, where it was denied by defendant DuBuc. (Complaint, ¶ 24)

According to plaintiff, on or about March 10, 2005, plaintiff appealed a grievance to Step III. (Complaint, ¶ 25) It is not clear from plaintiff's complaint which of the two previously mentioned grievances he appealed to Step III.

Plaintiff further alleges that, on April 8, 2005, the MRF defendants grew tired of plaintiff's repeated complaints and they transferred plaintiff to the Carson City Correctional Facility (DRF) out of retaliation, knowing that DRF was not a facility that could meet plaintiff's medical needs. (Complaint, ¶ 26) According to plaintiff, the staff at DRF recognized plaintiff's medical needs soon after plaintiff arrived and transferred him to JCF on April 14, 2005. (Complaint, ¶ 28)

As relief, plaintiff requests a declaratory judgment, injunctive relief, compensatory damages, and punitive damages. (Complaint, Requested Relief)

**B. Motion Pending Before the Court**

On November 14, 2007, defendants Wolfenbarger. Nunnery, Scott, Lewis and Klimowicz filed the motion to dismiss pending before the Court (D/E #22). In that motion to dismiss, defendants argue that plaintiff failed to state a claim for retaliation against defendants because transferring a prisoner is not an action that would deter a reasonable person from First Amendment activity. Defendants also argue that plaintiff failed to state a claim for violation of

his Eighth Amendment rights in light of the amount of medical care he received for his hearing impairment and his lack of injury. Defendants further argue that plaintiff's request for injunctive relief is moot given the fact that plaintiff was transferred to JCF prior to the filing of his complaint. Lastly, defendants argue they are entitled to Eleventh Amendment and Qualified immunities.

On December 17, 2007, plaintiff filed a response to defendants' motion to dismiss (D/E #25). In that response, plaintiff argues that he has stated a claim for retaliation given his allegations that Nunnery put plaintiff on phone restrictions, issued a notice of intent and threatened plaintiff with STG status. According to plaintiff, defendants' adverse acts also included transferring inmate Arnold so he no longer could assist plaintiff and transferring plaintiff to a facility that could not meet his needs. Plaintiff also argues that he has consistently alleged that defendants have failed to treat his hearing impairment and that his injury was not *de minimis*, considering the effect the lack of treatment had on plaintiff's ability to communicate. Plaintiff further argues that, with request to his transfer to JCF, defendants had no role in that decision and plaintiff is entitled to damages for their refusal to transfer plaintiff to a facility that could meet plaintiff's needs. Lastly, plaintiff argues that defendants are not entitled to qualified immunity because they violated plaintiff's clearly established constitutional rights.

**III. Standard of Review**

Defendants move to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). Fed. R. Civ. P. 12(b)(6) provides for dismissal of a claim for "failure to state a claim upon which relief can be granted." The Supreme Court clarified the law with respect to what a

plaintiff must plead in order to survive a Rule 12(b)(6) motion in Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). In Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Twombly, 127 S.Ct. at 1964-65 (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, 127 S.Ct. at 1969.

**IV. Discussion**

    **A. Claims Against Defendants in their Official Capacities**

In addition to being sued in their individual capacities, defendants Wolfenbarger, Nunnery, Scott and Klimowicz are being sued in their official capacities as well. (Complaint, ¶¶

5-8, 10)[2]  As argued by those defendants, the Eleventh Amendment bars plaintiffs claims against them to the extent they are sued in their official capacities.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

Courts have construed that language broadly and the Eleventh Amendment generally bars suits in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v. Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).[3]  "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief".  Doe, 21 F.3d at 736.  Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money

---

[2]Defendant Lewis is only sued in her individual capacity.  (Complaint, ¶ 9)

[3]As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir. 2005), a State's immunity comes with a host of exceptions; the immunity does not attach if the lawsuit is not against the State or an arm of the State, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the Federal Government brings the lawsuit.  Additionally, a State may elect to waive that immunity through legislation through its conduct in litigation.  Ernst, 427 F.3d at 358.  None of these exceptions are applicable in this case.

damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself. Doe, 21 F.3d at 737. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against MDOC officials are against them in their official capacities, the claims are barred by the Eleventh Amendment.

### B. Claims Against Defendants in their Individual Capacities

Defendants Wolfenbarger. Nunnery, Scott, Lewis and Klimowicz were all sued in their individual capacities. (Complaint, ¶¶ 5-10) With respect to the retaliation and deliberate indifference claims against them in their individual capacities, defendants argue they are entitled to qualified immunity.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the

earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

**1. Retaliation**

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc). "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir.2002) (internal quotation marks omitted).

In this case, defendants argue that plaintiff has failed to state a claim for retaliation because he failed to allege the existence of an adverse action taken by defendants. "An adverse

action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982). See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity"). Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable." 175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982)). A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625.

According to defendants, the adverse action alleged by plaintiff, transferring plaintiff to DRF, is not an adverse action for retaliation purposes and, therefore, his retaliation claim must be dismissed. (Defendants' Brief in Support of Their Motion to Dismiss, p. 2) As a preliminary matter, this Court would note that defendants appear to completely ignore plaintiff's allegations

that Nunnery also retaliated against plaintiff by issuing a notice of intent on plaintiff for plaintiff's use of the telephone and by threatening to put plaintiff on STG status. (Complaint, ¶ 21) This Court does not find that such adverse actions would be truly inconsequential if true and, regardless of whether plaintiff has stated a claim for retaliation with respect to his transfer to DRF, plaintiff's retaliation claims against Nunnery remain before the Court. Bell, 308 F.3d at 603.

With respect to the alleged retaliatory transfer of plaintiff to DRF, plaintiff has not sufficiently alleged the existence of an adverse act and that portion of his retaliation claim should be dismissed. Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct. See Hix v. Tennessee Dept. of Corrections, 196 Fed. Appx. 350, 358, (6th Cir. August 22, 2006); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. October 7, 2005); Smith v. Yarrow, 78 Fed. Appx. 529, 543-44 (6th Cir. October 20, 2003) (collecting cases). However, where there are aggravating factors, the courts have been willing to find that a prison transfer would deter a person of ordinary firmness. See Siggers-El v. Barlow, 412 F.3d 693, 704 (6th Cir. 2005); Hix, 196 Fed. Appx. at 358. In Siggers-El, the aggravating factors accompanying the transfer included certain foreseeable consequences of the transfer; loss of a high paying job needed to pay for the plaintiff's attorney and an increased difficulties for the plaintiff's attorney in visiting with or representing the plaintiff because he was moved further away from her. 412 F.3d at 704. See also McWright v. Gerald, No. 03-70167, 2004 WL 768641, *5 (E.D. Mich. March 26, 2004) (finding that the

plaintiff met the elements of a retaliatory transfer claim where evidence suggested a prison transfer was undertaken purposefully and expressly to interfere with an inmate's right of access to his attorney.)

In this case, there are no aggravating factors accompanying the transfer that suggest that it was an adverse act that would deter a person of ordinary firmness from the exercise of the right at stake. While plaintiff was being transferred to a facility that was allegedly unable to meet his needs, he was not being punished or put in a worse position given that he was being transferred from a facility that also could not meet his medical needs. In most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law, Bell, 308 F.3d at 603, but this case appears to only involve a transfer from one prison to another and, ordinarily, a prison transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct. See Hix, 196 Fed. Appx. at 358; King, 150 Fed. Appx. at 494; Smith, 78 Fed. Appx. at 543-44.

In light of the above findings, plaintiff has failed to state a claim of retaliation with respect to defendants Wolfenbarger. Scott, Lewis and Klimowicz, and those defendants are entitled to both qualified immunity and dismissal of plaintiff's retaliation claims against them. Plaintiff did, however, state claims of retaliation as to defendant Nunnery and those claims should be allowed to proceed.

**2. Deliberate Indifference**

Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those

whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300.

The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004). However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'" Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition. Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted). However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835. Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

In this case, defendants argue, with respect to plaintiff's entire deliberate indifference claim that plaintiff's medical needs were met:

> The plaintiff was receiving regular care for his hearing problems at MCF. He was seen by several doctors between September 2004 and February 2005. The plaintiff was given hearing tests and was fitted for a hearing aid. The plaintiff's medical needs were not being ignored. Also, the facility was equipped with a TTY phone system for deaf inmates. The plaintiff's needs were met; no 'state certified interpreter' was necessary for the plaintiff to use the TTY machine. [Defendants' Brief in Support of Their Motion to Dismiss, p. 2]

In support of that argument, defendants cite to the memorandum regarding a Step II grievance response, dated March 8, 2005, attached to plaintiff's complaint. (Step II Grievance Response, attached to Plaintiff's Complaint as "Document #53")

-14-

Despite defendants' arguments to the contrary, plaintiff has stated a claim for deliberate indifference. As discussed above, when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must assume that all the allegations in the complaint are true, Twombly, 127 S.Ct. at 1964-65, and it may consider only matters that are properly part of the complaint or pleadings, Briggs v. Ohio Elections Comm'n, 61 F.3d 487, 493 (6th Cir. 1995). In this case, defendants challenge the truth of plaintiff's allegations by pointing a Step II grievance response that appears to list the medical treatment that plaintiff has received in the past. However, while that Step II grievance response is attached to plaintiff's complaint, the medical records relied upon in that grievance response are not. Thus, defendants's argument consists of them merely alluding to evidence outside of the pleadings that they claim compels dismissal of plaintiff's deliberate indifference claims. Such an argument is insufficient in making a motion to dismiss pursuant to Fed. R. Civ. P., where the Court must only consider matters properly part of pleadings while assuming that all the allegations found in the complaint are true, and plaintiff's deliberate indifference claims should be allowed to proceed.

Defendants also briefly argue that:

> And the alleged injury suffered by the plaintiff (he could not use the phone) is, at most, a *de minimis* injury that does not rise to the level of a constitutional violation. Finally, because the plaintiff suffered only emotional injury due to not being able to use the phone, and no physical injury, section 1997e prevents this suit from proceeding. [Defendants' Brief in Support of Their Motion to Dismiss, p. 2]

While this Court does not find that plaintiff's alleged injury is de minimis in light of his inability to use the telephone and the retaliation he faced, plaintiff is barred, under 42 U.S.C. §

1997e(e), from recovering for mental or emotional injuries with respect to his deliberate indifference claims. 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Moreover, that statute applies to Eighth Amendment claims for emotional or mental damages such as plaintiff's. See Jarriett v. Wilson,162 Fed.Appx. 394, 400, (6th Cir. 2005); Jennings v. Mitchell, 93 Fed.Appx. 723, 725 (6th Cir. 2004) Grissom v. Davis, 55 Fed.Appx. 756, 758 (6th Cir. 2003); Lucas v. Nichols, No. 97-2060, 1999 WL 253711, *1, (6th Cir. Apr. 23, 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). The Sixth Circuit has indicated in unpublished opinions that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward. See, e.g., Jarriett, 162 Fed. Appx. at 400; Adams v. Rockafellow, 66 Fed.Appx. 584, 586 (6th Cir. 2003) (citing Siglar, 112 F.3d at 193, and Luong v. Hatt, 979 F.Supp. 481, 485 (N.D.Tex.1997)); Corsetti v. Tessmer, 41 Fed.Appx. 753, 755 (6th Cir. 2002) (citing Siglar and Luong in finding that two small bruises and minor cuts were de minimis injury); Styles v. McGinnis, 28 Fed.Appx. 362, 364 (6th Cir. 2001) (citing Siglar); Benson v. Carlton, No. 99-6433, 2000 WL 1175609, *1 (6th Cir. Aug. 9, 2000), (citing Siglar in finding that prisoner's "whirling sensation" in head after missing a meal was de minimis injury). See also Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that "cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force") (quotation and citation omitted).

In this case, while plaintiff briefly alludes to physical suffering in his complaint, there are no allegations that plaintiff suffered any physical injuries.  Consequently, plaintiff cannot recover for any mental or emotional injuries with respect to his deliberate indifference claim.[4]

**C. Request to Transfer to JCF**

As discussed above, defendants argue that plaintiff's request for injunctive relief ordering that defendants transfer plaintiff to a prison where his medical needs can be met is moot given the fact that plaintiff was transferred to JCF prior to the filing of his complaint. (Defendants' Brief in Support of Their Motion to Dismiss, p. 4)  However, while plaintiff makes a general request for injunctive relief in his complaint, he does not appear to request a transfer to a prison that can meet his medical needs. (Complaint, Requested Relief)  In his response to defendants' motion to dismiss, plaintiff merely argues that he is entitled to damages on the basis of defendants' failure to transfer for him and he does not dispute that he has been transferred to JCF.  Plaintiff also expressly notes that defendants were not the one who transferred him. (Plaintiff's Brief in Support of His Response to Defendants' Motion to Dismiss, pp. 19-20) Therefore, defendants motion to dismiss plaintiff's request for transfer is unnecessary as plaintiff

---

[4]To the extent defendants argue that plaintiff's entire deliberate indifference claim or retaliation claim is barred, they are incorrect.  § 1997e(e) may limit the relief available to prisoners who cannot allege a physical injury, but it does not bar their lawsuits altogether. See Williams v. Ollis, Nos. 99-2168, 99-2234, 2000 WL 1434459, *2 (6th Cir. September 18, 2000); Calhoun v. DeTella, 319 F.3d 936, 940-941 (7th Cir. 2003); Canell v. Lightner, 143 F.3d 1210, 1213 (6th Cir. 1998). As its title suggests, § 1997e(e) is a "limitation on recovery." Accordingly, physical injury is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself.

never made such a request in his complaint. To the extent plaintiff does make such a request, it is moot given that plaintiff has been transferred.

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion be **GRANTED IN PART**. The claims against Wolfenbarger, Nunnery, Scott and Klimowicz in their official capacities should be dismissed on the basis of defendants' immunity under the Eleventh Amendment to the United States Constitution. The retaliation claims against Wolfenbarger, Scott, Lewis and Klimowicz in their individual capacities should be dismissed because plaintiff failed to state a claim upon which relief can be granted against those defendants, but the retaliation claim against Nunnery in his individual capacity should be allowed to proceed. The claims of deliberate indifference against Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz should also be allowed to proceed, but plaintiff cannot recover for any mental or emotional injuries with respect to those claims because he did not suffer a physical injury. Defendants motion to dismiss plaintiff's request for transfer is unnecessary as plaintiff never made such a request in his complaint, but to the extent plaintiff does make such a request, it is moot given that plaintiff has already been transferred.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: July 30, 2008

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on July 30, 2008.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan