UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOEY OLIVER,

               Plaintiff,                    CIVIL ACTION NO. 07-12672

           v.                        DISTRICT JUDGE MARIANNE O. BATTANI

HUGH WOLFENBARGER,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
CORRECTIONAL MEDICAL
SERVICES[1], CAROLYNN DUBUC,
LARRY NUNNERY, J. SCOTT,
MS. LEWIS, KLIMOWICZ, and
JOHN DOE,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

       This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), alleges that the defendants (1) deprived

plaintiff of his rights under the United States Constitution and (2) violated the Americans with

Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA").  The matter comes before the court on

defendants Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz's Motion for Summary

Judgment (D/E #72).  Plaintiff filed a response in opposition to defendants' motion (D/E #77).

---

[1]Defendant Correctional Medical Services was dismissed by stipulation on August 14,
2008 (D/E #52).

-1-

For the reasons discussed below, this court recommends that defendants' motion be **GRANTED**

and that summary judgment be entered in favor of defendants Wolfenbarger, Nunnery, Scott and

Klimowicz.  This court also recommends that any claims against John Doe defendants be

dismissed because plaintiff was not granted leave to add any such claims in his amended

complaint.[2]  This court further recommends that the claims against defendant DuBuc, who has

not yet been served in this matter, be dismissed *sua sponte*.

## II.  Background

### A. Original Complaint

On June 25, 2007, plaintiff filed the complaint in this matter (D/E #1).  According to that

complaint, plaintiff was, at all times relevant to this action, an inmate at either the Macomb

Correctional Facility (MRF) or the G. Robert Cotton Correctional Facility (JCF).  (Complaint, ¶

3)  Plaintiff brought this action pursuant to 42 U.S.C. §1983, §1985(3) and § 1986, alleging that

defendants retaliated against him for filing a grievance and that defendants were deliberately

indifferent to his serious medical needs.  (Complaint, Preliminary Statement and ¶¶ 32-33)

Plaintiff also alleged state law claims of negligence and intentional infliction of mental and

emotional distress.  (Complaint, Preliminary Statement)  Defendants Wolfenbarger, Nunnery,

Scott and Klimowicz were sued in both their official and individual capacities while defendant

Lewis was sued in her individual capacity.  (Complaint, ¶¶ 5-8, 9-10)  As relief, plaintiff

---

[2]Plaintiff's amended complaint added two "Jane Doe" defendants while the docket sheet
only listed one "John Doe" defendant as being added.  However described, plaintiff did not have
leave to add any claims against new defendants in his amended complaint and those claims
should be dismissed.

requested a declaratory judgment, injunctive relief, compensatory damages, and punitive

damages.  (Complaint, Requested Relief)

### B. Motion to Dismiss

On November 14, 2007, defendants Wolfenbarger. Nunnery, Scott, Lewis and Klimowicz

filed a motion to dismiss (D/E #22).  In that motion to dismiss, defendants argued that plaintiff

failed to state a claim for retaliation against defendants because transferring a prisoner is not an

action that would deter a reasonable person from First Amendment activity.  Defendants also

argued that plaintiff failed to state a claim for violation of his Eighth Amendment rights in light

of the amount of medical care he received for his hearing impairment and his lack of injury.

Defendants further argued that plaintiff's request for injunctive relief was moot given the fact

that plaintiff was transferred to JCF prior to the filing of his complaint.  Lastly, defendants

argued that they were entitled to Eleventh Amendment and Qualified immunities.

On December 17, 2007, plaintiff filed a response to defendants' motion to dismiss (D/E

#25).  In that response, plaintiff argued that he stated a claim for retaliation given his allegations

that Nunnery put plaintiff on phone restrictions, issued a Notice of Intent to Hold an

Administrative Hearing (NOI),  and threatened plaintiff with Security Threat Group (STG)

status.  According to plaintiff, defendants' adverse acts also included transferring another inmate

so he no longer could assist plaintiff and transferring plaintiff to a facility that could not meet

plaintiff's needs.  Plaintiff also argued that he has consistently alleged that defendants have

failed to treat his hearing impairment and that his injury was not *de minimis*, considering the

effect the lack of treatment had on plaintiff's ability to communicate.  Plaintiff further argued

that, with request to his transfer to JCF, defendants had no role in that decision and plaintiff is entitled to damages for their refusal to transfer plaintiff to a facility that could meet plaintiff's needs.  Lastly, plaintiff argued that defendants were not entitled to qualified immunity because they had violated plaintiff's clearly established constitutional rights.

On July 30, 2008, this court issued a report and recommendation stating that defendants' motion to dismiss should be granted in part (D/E #49).  According to that report and recommendation, the claims against Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz in their official capacities should be dismissed on the basis of defendants' immunity under the Eleventh Amendment to the United States Constitution.  This court also recommended that the retaliation claims against Wolfenbarger, Scott, Lewis and Klimowicz in their individual capacities should be dismissed because plaintiff failed to state a claim upon which relief can be granted against those defendants, but that the retaliation claim against Nunnery in his individual capacity should be allowed to proceed with respect to plaintiff's claims that Nunnery retaliated against him by issuing a NOI and threatening plaintiff with STG status.  This court further recommended that the claims of deliberate indifference against Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz in their individual capacities should also be allowed to proceed, but that plaintiff be barred from recovering any mental or emotional injuries with respect to those claims because he did not suffer a physical injury.  Lastly, this court found that, while defendants' motion to dismiss plaintiff's request for transfer was unnecessary as plaintiff never made such a request in his complaint, to the extent plaintiff does make such a request, it is moot given that plaintiff has already been transferred

-4-

Both plaintiff and defendants objected to this court's report and recommendation (D/E #50, #54).  On September 24, 2008, the Honorable Marianne O. Battani issued an opinion and order adopting the report and recommendation (D/E #55).  In that same opinion and order, Judge Battani also granted plaintiff leave to amend his complaint in order to add a claim under the ADA.

### C. Amended Complaint

On October 24, 2008, plaintiff filed a purported amended complaint pursuant to Judge Battani's order (D/E #57).  In that amended complaint, plaintiff merely added a claim under the ADA to his original complaint while reasserting all of his earlier claims, including the ones that had been dismissed.

On November 7, 2008, this court issued a order striking plaintiff's amended complaint (D/E #59).  As found by this court, by reasserting previously dismissed causes of action, plaintiff failed to comply with Judge Battani's order and his amended complaint must be stricken from the record.  This court then granted plaintiff leave until November 26, 2008 to file an amended complaint, while also noting that his claims are limited to the ADA claim, the retaliation claim against Nunnery in his individual capacity, the claims of deliberate indifference against Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz in their individual capacities, and the claims plaintiff previously alleged against defendant DuBuc.  This court also advised plaintiff that he must follow all court orders in the future and that the failure to do so would result in sanctions and, potentially, dismissal of his case.

On December 12, 2008, plaintiff filed an amended complaint against the defendants named above and two "Jane Doe" defendants[3] (D/E #64).  In that amended complaint, plaintiff alleges that he suffers from a hearing impairment.  (Amended Complaint, ¶ 11)  Plaintiff also alleges that, on April 19, 2004, plaintiff informed defendant Nunnery that plaintiff could not use the prison's teletype phone system (TTY) due to plaintiff's hearing impairment and that plaintiff needed the help of a "state certified interpreter" to assist him.  (Amended Complaint, ¶ 13)  Plaintiff further alleges that, on June 1, 2004, he notified Nunnery that, because of plaintiff's inability to use the phone system, plaintiff's parents had to drive up to the prison to inform plaintiff that his sister had died and, subsequently, plaintiff was denied access over the phone to the family and friends who could have consoled plaintiff during plaintiff's grief over his sister's death.  (Amended Complaint, ¶¶ 13-14 )

Plaintiff asserts that he filed a grievances over his treatment and that his grievances were denied at Step II by defendant DuBuc.  (Amended Complaint, ¶¶ 12, 16, 18-20)  According to plaintiff's amended complaint, on December 22, 2004, Nunnery retaliated against plaintiff for filing a grievance by issuing a NOI on plaintiff for plaintiff's alleged violations of MRF policies regarding use of the telephone, despite the fact that Nunnery himself had authorized Arnold, another prisoner at MRF, to utilize plaintiff's pin number and assist plaintiff in using the TTY phone system.  (Amended Complaint, ¶ 17)  Plaintiff also alleges that, when he requested a state

---

[3]The Jane Doe defendants are alleged to be registered nurses at MRF (Amended Complaint, ¶ 10)

certified interpreter, Nunnery threatened to put plaintiff on STG status.  (Amended Complaint, ¶

17)

> In the "Claims for Relief" section of his amended complaint, plaintiff alleges:

>> Defendants, in their individual capacities, acting alone or in
>> concert with others, have violated Plaintiff's Eighth Amendment
>> rights through reckless, callous and deliberate indifference to
>> Plaintiff's serious medical needs.  Defendants, too, in their
>> individual and official capacities, acting alone or in concert with
>> others, have violated Plaintiff's Fourteenth Amendment rights, as
>> well as rights secured by the RA and ADA.  In addition, Defendant
>> Nunnery, in his individual capacity, retaliated against Plaintiff for
>> exercise of his First Amendment grievance and redress rights.

(Amended Complaint, ¶ 29)

### D. Pending Motion for Summary Judgment

On June 29, 2009, defendants filed the motion for summary judgment pending before the

court (D/E #72).  In that motion, defendants argue that they are entitled to qualified immunity

and summary judgment with respect to plaintiff's § 1983 claims because Nunnery did not

perform an adverse action and none of the defendants were involved in plaintiff's medical care.

Defendants also argue that plaintiff's ADA claim should be dismissed because the ADA does not

allow monetary damages against individual defendants and any injunctive relief plaintiff seeks

has already be deemed moot.

On August 18, 2009, plaintiff filed a response to defendants' motion for summary

judgment (D/E #77).  In that response, plaintiff argues that Nunnery's adverse actions included

putting plaintiff on phone restrictions, issuing a NOI, threatening plaintiff with STG status, and

having plaintiff transferred.  Plaintiff also argues that defendants were deliberately indifferent to

plaintiffs serious medical needs when they failed to provide plaintiff with an interpreter.

Plaintiff further argues that defendants have violated the ADA by failing to accommodate his

needs.

### III. Standard of Review

Defendants move for summary judgment pursuant to Fed. R. Civ. Pro. 56(b).  Fed. R.

Civ. Pro. 56(b) states that "[a] party against whom a claim, counterclaim, or cross-claim is

asserted or a declaratory judgment is sought may, at any time, move without or without

supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw

all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co.,

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106

S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his

pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

As a preliminary matter, this court would again note that, while Judge Battani's order granted plaintiff leave to amend his complaint, plaintiff was only granted leave to add a claim under the ADA  and his claims are therefore limited to the ADA claim, the retaliation claim against Nunnery in his individual capacity, the claims of deliberate indifference against Wolfenbarger, Nunnery, Scott, Lewis and Klimowicz in their individual capacities, and the claims plaintiff previously alleged against defendant DuBuc.  Given that limitation, any previously-dismissed claims or new claims against  "Jane Doe" defendants are not properly part of the amended complaint and should be dismissed by the court.

Plaintiff's remaining claims will be discussed below and this court recommends that defendants Wolfenbarger, Scott, Lewis, Klimowicz and Nunnery be granted summary judgment as requested in their motion.  Moreover, this court also recommends that the claims against defendant DuBuc be dismissed *sua sponte*.

**A. Constitutional Claims**

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001)

*overruled in part by* <u>Pearson v. Callahan</u>, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).  The privilege is an immunity from suit and not a mere defense to liability.  <u>Saucier</u>, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" <u>Flint ex rel. Flint v. Kentucky Dept. of Corrections</u>, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting <u>Poe v. Haydon</u>, 853 F.2d 418, 425-426 (6th Cir. 1988).  A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established.  <u>Saucier</u>, 533 U.S. at 201.  In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson</u>, 129 S.Ct. at 818.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." <u>Saucier</u>, 533 U.S. at 201.

-10-

**1. Retaliation Claim**

As discussed above, plaintiff's remaining retaliation claim alleges that defendant Nunnery improperly retaliated against him for filing a grievance by issuing a NOI against plaintiff and threatening plaintiff with STG status.  To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct.  Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context."  Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir. 2002) (internal quotation marks omitted).

In this case, defendants argue that plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to his retaliation claim against Nunnery because he cannot show that Nunnery took any adverse actions against him.  "An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake."  Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982).  See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity").  Moreover, "in most cases, the question of whether an alleged

-11-

retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable." 175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625.

Here, plaintiff alleges that defendant Nunnery improperly retaliated against him for filing a grievance by issuing a NOI against plaintiff and threatening plaintiff with STG status. However, defendants' evidence demonstrates that Nunnery did not issue the NOI that forms the basis of the plaintiff's retaliation claim. (NOI; attached as Exhibit E to Plaintiff's Response to Defendants' Motion for Summary Judgment) The NOI was actually issued by an "L. Ernst and Nunnery's name does not appear anywhere on the NOI. (NOI; attached as Exhibit E to Plaintiff's Response to Defendants' Motion for Summary Judgment) Nunnery did, however, conduct the Administrative Hearing on the NOI, and, at the hearing, Nunnery ruled in plaintiff's favor: "Prisoner Oliver 210352 will NOT be placed on telephone restriction. Prisoner's telephone privileges will be reinstated immediately." (Administrative Hearing Report, attached

-12-

as Exhibit A to Defendants' Motion for Summary Judgment).  Given that Ernst issued the NOI

and Nunnery subsequently ruled in plaintiff's favor at the administrative hearing, no rational trier

of fact could conclude that Nunnery took an adverse action against plaintiff by issuing an NOI

and, therefore, Nunnery is entitled to summary judgment on that claim.

With respect to plaintiff's claim that Nunnery committed an adverse action by

threatening plaintiff with STG status, plaintiff's own deposition testimony provides that it was a

Sergeant Walsh who threatened him twice with STG status and made him sign two forms

renouncing affiliation with a gang.  (Plaintiff's Deposition, p. 23; attached as Exhibit B to

Defendants' Motion for Summary Judgment)  Plaintiff did state at his deposition that Nunnery

had Walsh threaten plaintiff (Plaintiff's Deposition, p. 23; attached as Exhibit B to Defendants'

Motion for Summary Judgment), but there is no evidence supporting that assertion and it appears

that Nunnery was again not involved in the alleged adverse action.  In any event, plaintiff was

never placed on STG status and there is no evidence or argument suggesting that a mere threat to

placed on STG status would deter a person of ordinary firmness' from the exercise of the right at

stake.

### 2. Deliberate Indifference

Defendants also argue that they are entitled to summary judgment on plaintiff's claims

that they were deliberately indifferent to his serious medical needs.  Elementary principles

concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the

government's obligation to provide medical care for those whom it is punishing by incarceration.

Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  A prisoner's

claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment.  See Estelle, 429 U.S. at 103-104.  To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  Wilson, 501 U.S. at 300.

The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297.   "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test."  Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).  To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the

-14-

prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

Here, there is no dispute that plaintiff's hearing impairment constitutes a serious medical need and that his claim is limited to a claim that defendants did not provide him with a "State Certified Interpreter" to help use the TTY machine.  (Plaintiff's Deposition, p. 9; attached as Exhibit B to Defendants' Motion for Summary Judgment)  The TTY machine works by sending written messages over the phone lines as opposed to spoken.  (Minicom Manual; attached as Exhibit C to Defendants' Motion for Summary Judgment)  The user types the message to be sent and reads on the screen the message that the person on the other end sends.  (Minicom Manual; attached as Exhibit C to Defendants' Motion for Summary Judgment)  Plaintiff was provided opportunity to use the TTY machine (Plaintiff's Deposition, p. 15; attached as Exhibit B to Defendants' Motion for Summary Judgment), but he also testified that he suffers from a learning disability and that he cannot "type and spell fast enough" to use the TTY on his own.  (Plaintiff's Deposition, p. 11; attached as Exhibit B to Defendants' Motion for Summary Judgment)

-15-

Plaintiff further testified at a deposition that an inmate named Arnold, who knew how to use the machine, was assigned by Nunnery to assist him with his calls on at least a couple of occasions (Plaintiff's Deposition, p. 8, 13, 38; attached as Exhibit B to Defendants' Motion for Summary Judgment) and that he was also able to communicate with his family by written letter (Plaintiff's Deposition, p. 53; attached as Exhibit B to Defendants' Motion for Summary Judgment).

On the basis of the above evidence, defendants Wolfenbarger, Scott, Lewis and Klimowicz are entitled to summary judgment due to a lack of personal involvement.  To succeed in a claim under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation.  Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  See Turner v. City of Taylor,  412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).  Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.

-16-

Here, assuming *arguendo* that there was a constitutional violation, there is no evidence that Wolfenbarger, Scott, Lewis or Klimowicz were personally involved.  Plaintiff's amended complaint does not assert any specific actions by any of those defendants and he does not point to any evidence suggesting that they were involved or that they had any knowledge of his situation.  Moreover, while plaintiff's amended complaint identifies Wolfenbarger, Scott, Lewis and Klimowicz as supervisors at MRF (Amended Complaint, ¶¶ 4, 6-8), a respondeat superior theory of liability is not cognizable under 42 U.S.C. § 1983, Turner,  412 F.3d at 649, and there is no evidence that they implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Shehee, 199 F.3d at 300.

The evidence does suggest that defendant Nunnery was personally involved in the alleged denial of an interpreter, but no genuine issue of material fact is in dispute with respect to whether such a denial constituted deliberate indifference to plaintiff's hearing impairment.  As argued by defendants, plaintiff did not provide any documentation to Nunnery from medical personnel suggesting that plaintiff could not use the TTY system and the "Special Accommodation Notice" plaintiff attached to his response actually indicates that plaintiff "[n]eeds TTY phone".  (Special Accommodation Notice; attached as Exhibit A to Plaintiff's Response to Defendants' Motion for Summary Judgment)  Plaintiff's deposition testimony also demonstrates that Nunnery assigned another inmate to assist plaintiff at one point and that plaintiff had other means of communicating.  (Plaintiff's Deposition, pp. 8, 13, 38, 53)  As discussed above, deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson, 963 F.2d at 853.  Here, even assuming plaintiff was

-17-

unable to use the TTY system, Nunnery's actions did not rise to that level of deliberate indifference to plaintiff's hearing impairment.

### B. ADA Claims

Plaintiff asserts that defendants have violated the Americans with Disabilities Act (ADA) by failing to provide him with "equal accommodations."  Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  Jones v. City of Monroe, Michigan, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132).  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity."  Jones, 341 F.3d at 477 (quoting 42 U.S.C. § 12131).

The ADA applies to state prisoners, see McKinley v. Bowlen, 8 Fed. Appx. 488, 491 (6th Cir. 2001) (citing Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998)), but a "public entity" under the ADA does not include an individual prison official, see Lee v. Michigan Parole Bd., 104 Fed. Appx. 490, 493 (6th Cir. 2004); Cox v. Jackson, 579 F.Supp.2d 831, 850 (E.D. Mich. 2008) (Rosen, C.J.); Tanney v. Boles, 400 F.Supp.2d 1027, 1044 (E.D. Mich. 2005) (Roberts, J.).  The term "public entity" is defined, in relevant part, as "any State or local government."  See 42 U.S.C. § 12131(1)(A).  Therefore,

-18-

under Title II of the ADA, which forbids discrimination by 'any public entity', 42 U.S.C. §

12131, the proper defendant is that 'entity " and the ADA does not impose liability upon

individuals.  See Williams v. McLemore, 247 Fed. Appx. 1, 8 (6th Cir. 2007) ; Lee, 104 Fed.

Appx. at 492-493; Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n. 1 (6th Cir. 1999);

Wathen v. Gen. Elec. Co., 115 F.3d 400, 404-05 n. 6 (6th Cir. 1997).

Therefore, plaintiff may not maintain an action under the ADA against the individual

defendants identified in his complaint and defendants are entitled to summary judgment on

plaintiff's ADA claims for money damages against defendants in their individual capacities.[4]

### C. Defendant DuBuc

On July 25, 2007, plaintiff filed the complaint against defendants in this matter (D/E #1).

Following the filing of the complaint, the Honorable R. Steven Whalen issued an order directing

service without prepayment of costs and authorizing the United States Marshal's Service to

collect costs after service was made (D/E #4, #10).  All of the defendants, with the exception of

defendant DuBuc were subsequently served (D/E #12-16, #20).

The Federal Rules of Civil Procedure Rule 4(c)(1) provides that a plaintiff is responsible

for serving the summons and complaint within the applicable time period.  Without such personal

service, a district court is without jurisdiction to render judgment against a defendant.  Friedman

v. Estate of Presser, 929 F.2d 1151, 1156 (6th Cir. 1991).  The time limit for service of process is

120 days after the filing of the complaint. Fed. R. Civ. P. 4(m).  "Absent a showing of good

---

[4]As noted by defendants, plaintiff's request for injunctive relief have already been
deemed moot (D/E #49, #55).

-19-

cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." Byrd v. Stone, 94 F.3d 217, 219 (6th Cir. 1996), citing Habib v. Gen. Motors Corp., 15 F.3d 72, 73 (6th Cir. 1994).

The plaintiff generally bears responsibility for appointing an appropriate person to serve a copy of his complaint and the summons upon a defendant. Fed. R. Civ. P. 4(c)(1). The appointed person is usually a commercial process server plaintiff has contracted with to effectuate service for a fee. "In the case of a plaintiff proceeding *in forma pauperis*, however, the assumption is that, because the plaintiff cannot pay fees and costs, it is likely the plaintiff cannot afford to hire a process server." Byrd, 94 F.3d at 219. For this reason, 28 U.S.C. § 1915(c) provides that the officers of the court "shall issue and serve all process" when a plaintiff is proceeding *in forma pauperis*. "Fed. R. Civ. P. 4(c)(2) dovetails with § 1915(c) by providing that the court must appoint a United States Marshal to serve plaintiff's process 'when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.'" Byrd, 94 F.3d at 219 (quoting Fed. R. Civ. P. 4(c)(2)). "Together, Rule 4(c)(2) and 28 U.S.C. § 1915(c) stand for the proposition that when a plaintiff is proceeding *in forma pauperis* the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint." Byrd, 94 F.3d at 219. See also Olsen v. Mapes, 333 F.3d 1199, 1204-05 (10th Cir. 2003) (holding that *in forma pauperis* plaintiffs were not culpable for failure to timely serve where there was no evidence that they failed to cooperate with the Marshals Service); Young v.

-20-

Quinlan, 960 F.2d 351, 359 (3d Cir. 1992) (holding that *in forma pauperis* plaintiff "should not

be penalized for failure to effect service where it failed through no fault of his own."); Rochon v.

Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987) ("a plaintiff proceeding *in forma pauperis* is

entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the

Marshal's Service to properly effect service of process, where such failure is through no fault of

the litigant.").

However, "although an incarcerated plaintiff proceeding *in forma pauperis* may rely on

service by the U.S. Marshals, he 'may not remain silent and do nothing to effectuate such

service.'" Abel v. Harp, 122 Fed. Appx. 248, 252, (6th Cir. 2005) (quoting Rochon, 828 F.2d at

1110).  "At a minimum, he should 'request service upon the appropriate defendant and attempt to

remedy any apparent service defects of which a plaintiff has knowledge.'" Abel, 122 Fed. Appx.

at 252 (quoting Rochon, 828 F.2d at 1110).

Defendant DuBuc has not been served and the deadline for timely service has long since

passed.  Moreover, no good cause is exists which would excuse lack of timely service.  While

plaintiff is proceeding *in forma pauperis* and should therefore be able to rely on the U.S.

Marshals for service, plaintiff has sat idly by after that initial failure to serve.  While all of the

defendants besides DuBuc were served, the U.S. Marshal's Service was unable to serve DuBuc

given the information provided by plaintiff.  Plaintiff was presumably aware of that unexecuted

waiver of service, but he did nothing to help remedy the situation.  Given plaintiff's inaction and

the steps taken by this court and the U.S. Marshal's Service, no good cause exists to excuse the

lack of timely service and defendant DuBuc should be dismissed from this action.[5]

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion be

**GRANTED** and that summary judgment be entered in favor of defendants Wolfenbarger,

Nunnery, Scott and Klimowicz.  This court also recommends that any claims against John Doe

defendants be dismissed because plaintiff was not granted leave to add any such claims in his

amended complaint.  This court further recommends that the claims against defendant DuBuc,

who has not yet been served in this matter, be dismissed *sua sponte*.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

---

[5]This court would also note that, while defendant DuBuc is not part of the motion for
summary judgment before the court, she would be entitled to summary judgment for the same
reasons discussed above if she was ever served.

-22-

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: October 29, 2009

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 29, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan